UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDGAR JOSE CANSECO,

    Petitioner,

vs.

SUZANNE M. PEERY,

    Respondent.

No. 2:15-cv-2454-MCE-EFB P

FINDINGS AND RECOMMENDATIONS

    Petitioner is a state prisoner who, represented by counsel, is proceeding with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on June 13 and 14 of 2012 in the San Joaquin County Superior Court on charges of first degree murder, attempted second degree robbery, firearm and gang enhancements to each of those offenses, and the special circumstance allegation that the murder occurred during the commission of an attempted robbery. He seeks federal habeas relief on the following grounds: (1) the instructional presentation for murder misled the jurors into believing that first and second degree murder could be conflated and this created a substantial possibility that the first degree murder verdict was not unanimous; (2) the felony murder rule should not apply to conspirators; (3) the trial court erred in instructing that conspiracy supported a felony-murder special circumstance; and (4) there was cumulative error. Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> The murder victim, Kevin Prater, his girlfriend, and defendant Canseco had been friends since attending a high school in Tracy. In September 2010, the girlfriend (who had moved out of state) was visiting her local family and the victim. She was the primary eyewitness to the crimes.
>
> A few days before the events underlying the convictions, the three had gone out for fast food. During the hour or so that they spent together, the girlfriend did not sense anything out of the ordinary about defendant Canseco's behavior. In the early evening on September 15, the girlfriend and the victim were watching television at his mother's home. Defendant Canseco kept trying to call the victim, who at first was ignoring the calls. The victim eventually answered and spoke with defendant Canseco, then told the girlfriend that they were going to go pick him up (a courtesy they often offered each other).
>
> The victim was wearing a large amount of expensive jewelry, including a gold watch, diamond earrings, a gold chain, a three-diamond ring, a diamond tennis bracelet, and a detachable gold crown cap over his top front teeth. The total estimated value was about $3,000. In the car's console were an imitation Rolex and his mother's broken gold nugget tennis bracelet (the estimated value of the latter was $3,495), which she had given to him a couple of weeks earlier to get fixed.
>
> The victim drove to a cul-de-sac west of Tracy Boulevard bordered on the south side by train tracks, which were fenced off (although there was an opening cut in the fencing), and on the north side by houses. Oleanders grew along the fence. The location was not well illuminated. Defendant Canseco was standing in the road near the shrubbery. The girlfriend testified that she and the victim had remarked "it looked like he on something." As defendant Canseco was wearing a black hooded sweatshirt over his red hat and shirt, getting picked up in the middle of nowhere and looking ill at ease, she thought he also looked like he was up to something and being sneaky.
>
> Defendant Canseco got into the back seat and started texting. The girlfriend wanted to go to the grocery store to get a snack, but defendant Canseco asked them first to drive to a house on Beechnut Street, which was on the south side of the train tracks near Alden Park. This was near the other side of the opening in the fence. Defendant Canseco briefly went inside while the others waited.

2

On his return, they drove to the store, which was less than five minutes away. Defendant Canseco continued texting on his phone. The girlfriend went in to get her snack. When she came back, defendant Canseco asked them to return to the cul-de-sac to get "something" from a friend. When they arrived, defendant Mendoza was standing about where defendant Canseco had been. He got in the back seat behind the girlfriend. The girlfriend testified that he had looked familiar to her when he got into the car, and she thought he may have attended high school with them.

Less than a minute later a tall and slender man dressed in dark clothing and wearing a mask, suddenly appeared at the driver's window with a long gun and demanded the victim's property. He was loud and aggressive. The victim turned to defendant Canseco and asked angrily if this was "what you on" (the girlfriend interpreting his remark for the jury as meaning that he could not believe defendant Canseco had set him up). Defendant Canseco did not respond. The victim began tussling with the stranger for control of the weapon. Both defendants started trying to restrain him from the back seat. The girlfriend was in the process of escaping from the car when she heard a single shot, and ducked into some nearby oleander bushes. Both defendants and the shooter ran off through the opening in the fence.

The victim hit the gas pedal with his foot and the car drove off down the cul-de-sac to Tracy Boulevard, where it crashed. He died from a gunshot wound that appeared unremarkable on the surface but resulted in "explosive" internal injuries, indicating it was likely a high-velocity bullet fired from a rifle.

The girlfriend, who had hidden to make sure the other men were gone, ran down the street to the car. A police officer who had been patrolling nearby was already there, arriving a minute after a 911 call at 9:01 p.m. Within minutes, other police officers arrived at the scene. The girlfriend told them about the attempted robbery and gave them defendant Canseco's name. She later identified defendant Mendoza in a photographic lineup.

Two residents of the cul-de-sac also testified about their observations that night. The details vary somewhat from the girlfriend's. As the girlfriend's testimony otherwise is substantial evidence of the circumstances of the offenses, we omit a summary of these other witnesses because they do not add anything material.

Defendant Canseco was arrested the following evening when the police stopped a car in which he was travelling. The police obtained a warrant for defendant Mendoza's arrest a few days later after his identification. He was eventually captured in Cuidad Juarez, Mexico, in October 2011.

As noted above, there was an exhibit of texts to and from defendant Canseco on the evening of September 15, 2010. Between 8:00 and 9:00 p.m., in addition to texts between the victim and Canseco, there were a

3

number sent between Canseco (area code 510) and Mendoza (area code 209), and Canseco and a person nicknamed Taz5 (area code 925). In response to Taz's query, Canseco said he was at a park (Alden) on Palm Circle at 8:10 p.m., a street running south from Beechnut Street near the fence opening. Taz said he would walk there. At 8:35 p.m., defendant Canseco told Mendoza to start walking and told Taz at 8:38 p.m. to act as a lookout. At 8:40 p.m., Canseco told Mendoza "he" (i.e., the victim) was trying to leave and that they would be heading to Beechnut Street. At 8:43 p.m., Canseco told Mendoza to go down Beechnut away from Tracy, and then a minute later told him to go back to the cul-de-sac. Mendoza told Canseco to act as if he was picking up a "bag" (presumably of marijuana) from him. At 8:47 p.m. and 8:48 p.m., Canseco told Mendoza that he would be right back after they stopped at the grocery store. (At the same time, the victim sent his final text, asking where defendant Canseco was.) At 8:51 p.m., Taz asked if "he" was armed; Canseco assured Taz "he" was not, and let Taz know that "he" was wearing a gold crown front cap. At 8:54 p.m. and 8:55 p.m., Canseco said they were on the way and told Mendoza to be ready. Mendoza asked if Canseco had said he was getting marijuana; Canseco answered in the affirmative. Canseco asked Mendoza if he should stay in the car when picking up the marijuana or get out. At 8:58 p.m., Mendoza told him to stay in the car, and said he was going to be at the corner. As noted, the 911 call occurred at 9:01 p.m.

Defendant Canseco had called his brother later that evening and told him to move ammunition from defendant Canseco's room to the brother's room, and to leave the front door unlocked. The brother knew that the ammunition was for a sawed-off rifle that defendant Canseco owned. Defendant Canseco had sent pictures to his girlfriend of himself and his brother showing Canseco holding a rifle. In a search of the Canseco home on the morning after the shooting, police retrieved the ammunition from the brother's room and a scope in defendant Canseco's room. These were compatible with the model of the rifle he appeared to be holding in the photographs, and a fragment retrieved from the victim was a base of a bullet of the same size as the ammunition. This ammunition usually inflicted wounds similar to the victim's.

*People v. Mendoza*, No. C071775, 2014 WL 2466565, at *1–3 (Cal. Ct. App. June 3, 2014), review denied (Aug. 27, 2014).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

/////

4

application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34, (2011)); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

/////

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

6

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

decision of [the Supreme] Court." *Id.* at 102.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

    **A**.  **Instructional Presentation for Murder**

In his first ground for habeas relief, petitioner argues that the trial court mistakenly informed the jury that second and first degree murder could be conflated into the single crime of murder.  ECF No. 1-1 at 12-13. [2]  Petitioner contends that this error created a 'substantial possibility' that the jury's first degree murder verdict was not actually unanimous.  *Id*. at 12-15. The California Court of Appeal rejected this argument and reasoned as follows:

> The trial court instructed the jury after closing arguments. In the segment of the instructions devoted to the charge of murder, the trial court informed the jury that "[t]he Defendants have been prosecuted for murder under three theories. And these were discussed yesterday. One is malice aforethought. Two, felony murder of the first degree. And, three, murder of the second degree. Each theory of murder has different [elements], and I will instruct you on all of them.... You may not find the Defendants guilty of murder unless all of you agree that the People have proved that the Defendants committed murder under at least one of these theories. *You do not all have to agree on the same theory*."(Italics added.) Taking up the element of malice necessary to establish murder, the trial court instructed that it could be either express or implied, defining both types. The court next explained that "[i]f you decide that the Defendants committed murder, you must *then* decide whether it is murder of the first or second degree." (Italics added.) The court continued with the pattern instructions defining the element of premeditation necessary for first degree murder. In connection with the lesser offense, the trial court instructed that "The requirements for second degree murder based on express or implied malice are explained in CALCRIM [No.] 520.... The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

8

rather than a lesser crime. If the People have not met this burden, you must find the Defendants not guilty of first degree murder." The court thereafter instructed on the alternative theory of first degree felony murder without malice.

The court turned to the process of reaching a verdict: "[W]e had everyone here talk about first degree murder, and also the lesser offense of second degree murder.... [Y]ou've got verdict forms for first degree murder, verdict forms for second degree murder. If you are not satisfied beyond a reasonable doubt that the Defendants are guilty of ... first degree murder and you unanimously so find, you may nevertheless convict [them] of the *lesser crime* of second degree murder, provided you are unanimously satisfied beyond a reasonable doubt that [they are] guilty of that crime. Thus, you are to determine whether the Defendants are guilty or not guilty of the crime of first degree murder or the lesser crime of second degree murder.... [T]he Court cannot accept a *guilty verdict* on the lesser crime of second degree murder *unless you have unanimously found the Defendants not guilty of first degree murder*." (Italics added.) It reiterated, "if you find the Defendants guilty of first degree murder, you should not complete the verdict form on the corresponding lesser offense of second degree murder.... [¶] If you find the Defendants not guilty of first degree murder ... you *then* need to complete the verdict on the ... included offense[ ] of second degree murder by determining whether the Defendants are guilty or not guilty of that crime." (Italics added.)

Defendant Canseco contends the jury could reasonably interpret the trial court's instruction at the outset ("You do not all have to agree on the same theory"), after the court had listed three theories that included murder of the second degree, as allowing the jury to return a verdict of first degree murder even though some jurors believed him guilty only of second degree murder. We reject this strained logic.

In the first place, defendant Canseco has forfeited this claim because it is based on what he perceives as an imprecision in an instruction that is otherwise a correct statement of the law, for which he was required to request modification or amplification in the trial court. (*People v. Lee* (2011) 51 Cal.4th 620, 638.) We also reject his assertion that trial counsel was ineffective for failing to make such a request because trial counsel could reasonably have concluded that any modification of the instruction was unnecessary, as we will explain.

Under federal and state law, a defendant must establish the reasonable likelihood that a reasonable juror would have interpreted an instruction in the claimed erroneous manner. (*Boyde v. California* (1990) 494 U.S. 370, 378, 380 [108 L.Ed.2d 316]; *People v. Williams* (2013) 56 Cal.4th 630, 688.) While it is theoretically possible that the court's remark at the outset of the discussion of the theories of murder may have suggested of itself that the three theories are interchangeable, the subsequent instructions defining

9

> the theories and the process of returning a verdict (and the separate verdict forms for first and second degree murder) made it abundantly clear to the jury that the elements of second degree murder were not relevant to its deliberations over premeditated first degree murder, because it could not return a verdict under a theory of second degree murder until it was unanimously convinced that defendants were not guilty of premeditated first degree murder (or felony murder, for which malice was not even relevant and no decision was necessary on degree). Moreover, even if the instruction has any ambiguity, nothing in the arguments of counsel suggested that a verdict of first degree murder could rest on a theory of implied malice without premeditation. (*Middleton v. McNeil* (2004) 541 U.S. 433, 438 [158 L.Ed.2d 701]; *People v. Kelly* (1992) 1 Cal.4th 495, 526–527.) Rather, counsel referred to the principle of nonunanimous theories to explain why they were discussing both of the theories of felony murder and premeditated murder. As a result, we reject this argument.

*Mendoza*, 2014 WL 2466565, at *4. Petitioner raised this claim in a petition for review filed with the California Supreme Court. Lodg. Doc. No. 9 (Petition for Review) at 21-25. This petition was denied. Lodg. Doc. No. 10 (Order Denying Petition for Review).

### 1. <u>Applicable Legal Standards</u>

There is no federal constitutional right to a unanimous verdict in a criminal case. *See Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991); *see also Richardson v. United States*, 526 U.S. 813, 821 (1999) ("[T]his Court has not held that the Constitution imposes a jury-unanimity requirement."). Nevertheless, a state may violate due process where it fails to vindicate a procedural protection which its laws guarantee. *Evitts v. Lucey*, 469 U.S. 387, 400-01 (1985). California law mandates that juries in criminal cases unanimously agree that a defendant committed a specific crime. *People v. Russo,* 25 Cal. 4th 1124, 1132 (2001). Additionally, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." *Id*. That being said, "[h]abeas corpus relief for an asserted violation of due process [arising from a violation of state law] is available only when the state court's action is arbitrary or fundamentally unfair." *Cooks v. Spalding*, 660 F.2d 738, 739 (9th Cir. 1981).

/////

## 2. **Analysis**

As a preliminary matter, the appellate court determined that this claim was procedurally barred by petitioner's failure to request "modification or amplification" of the offending instruction from the trial court.[3] *Mendoza*, 2014 WL 2466565, at *4. Now, respondent argues that this claim should be rejected by this court as procedurally barred. ECF No. 11 at 21-22. The court declines to reach this argument because petitioner's claim clearly fails on its merits. *See Franklin v. Johnson,* 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar.").

Petitioner argues that the trial court's instructions "prejudicially misled the jurors to believe that first degree-murder and second-degree murder could be conflated into one." ECF No. 1-1 at 12. The appellate court disagreed, noting that the instructions, read in their totality, made clear that first and second degree murder were distinct and that the jury could not consider the lesser offense until and unless they had concluded that petitioner was not guilty of the greater. *Mendoza*, 2014 WL 2466565, at *4. The appellate court's determination was not unreasonable. First, the trial court gave explicit instructions delineating the requirements for first degree murder under a theory of deliberation and premeditation as set out in CALCRIM 521. Lodg. Doc. No. 1, Clerk's Transcript on Appeal, Vol. 2 at 534. It distinguished the requirements for second degree murder by referring to CALCRIM 520 (previously given to the jury) and cautioned that "[t]he people have the burden of proving beyond a reasonable doubt that the killing was first degree rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder." *Id*. Then, in explaining the process for convicting the petitioner of the lesser offense of second degree murder, the trial court explained:

> If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime of first degree murder and you unanimously so find, you may nevertheless convict him of the lesser crime of second degree murder provided you are unanimously satisfied beyond a reasonable doubt that he is guilty of that crime.

---

[3] As demonstrated in the section reproduced above, however, it went on to consider the merits of his claim.

11

> Thus, you are to determine whether the defendant is guilty or not guilty of the crime of first degree murder or the lesser crime of second degree murder. In doing so, you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it. You may find it productive to consider and reach a tentative conclusion before reaching any final verdict.
>
> *However, the court cannot accept a guilty verdict on the lesser crime of second degree murder unless you have unanimously found the defendant not guilty of first degree murder.*

Lodg. Doc. No. 1, Clerk's Transcript on Appeal, Vol. 2 at 537 (emphasis added). Petitioner has not provided any evidence that the jurors disregarded these instructions and, absent such evidence, the jury is presumed to have complied. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Accordingly, the court cannot find that these instructions rendered petitioner's trial fundamentally unfair and he is not entitled to habeas relief on this claim.

**B**. **Application of Felony Murder Rule to Conspirators**

Petitioner's next two claims concern the propriety of applying certain California felony-murder provisions to the facts of his case. First, he argues that derivative liability under the felony-murder rule, as set forth in section 189 of the California Penal Code, should not apply to a conspirator because a 'pure conspirator' (as he claims to have been) has no control over how a particular felony is committed. ECF No. 1-1 at 15-17. Second, he argues that the trial court erred by instructing the jury that felony-murder special circumstance, as articulated in section 190.2(c)-(d)[4] of the California Penal Code, applies to members of a conspiracy. ECF No. 1-1 at 18-19.

---

[4] The sections cited by petitioner provide:

(c) Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4.

(d) Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree

12

The court of appeal rejected both claims:

### Felony-murder Derivative Liability Applies to Conspirators

The trial court instructed the jury that it could find defendant Canseco guilty of felony murder either as an aider/abettor or as a conspirator. He now contends conspiracy should not be considered a proper basis for derivative liability for felony murder. Based on *People v. Washington* (1965) 62 Cal.2d 777, which declared that the purpose of the felony-murder rule is to deter negligent or accidental deaths during a felony, and that the rule should be strictly construed (*id.* at pp. 781, 783), defendant Canseco asserts "pure" conspirators—presumably those who otherwise neither aid nor abet the commission of the felony—would not have any power to control the manner in which the felony was committed, and therefore no purpose is served extending the rule to them.

The problem with his argument is the Supreme Court's unqualified declarations that conspiracy, even where not prosecuted as an independent offense, is a proper basis for criminal liability for the acts of a coconspirator. (*In re Hardy* (2007) 41 Cal.4th 977, 1025 (Hardy ); *People v. Belmontes* (1988) 45 Cal.3d 744, 788.) If there is to be any limit on this principle, that court must establish it, not this one. We therefore reject his claim.

### The Felony-murder Special Circumstance Also Applies to Conspirators

A sentence of life without parole can apply to any person other than the actual killer who, with the intent to kill (or as a major participant with reckless indifference to life), aids, abets, counsels, commands, induces, solicits, requests, or assists in committing a felony murder. (§ 190.2, subds. (c) & (d).) The trial court instructed the jury that this special circumstance applied both to those guilty of first degree murder as an aider/abettor or as a member of a conspiracy.

Defendant Canseco asserts that "conspire" is not explicitly included among the other terms in these subdivisions, and therefore its inclusion in the pattern jury instruction for a special circumstance is unwarranted. He points out that one may conspire without aiding/abetting, which requires "actual participation in the ... offense" (*People v. Malotte* (1956) 46 Cal.2d 59, 65–66), and one can aid or abet a crime without having conspired to do so (*People v. Morante* (1999) 20 Cal.4th 403, 433). He also claims that

---

therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4.

Cal. Penal Code § 190.2 (c)-(d).

13

> section 31, which applies "criminal liability as a principal to those who are not present at the commission of an offense" if (with the requisite mental state) they assisted the actual perpetrator (*Morante*, at p. 433), is limited to aiders and abettors, not coconspirators.
>
> His arguments are untenable. Defendant Canseco does not explain how in general a conspirator who is a major participant acting at least with reckless disregard of life would not also be aiding and abetting the felony murder even if the statute did not contemplate the inclusion of pure conspirators within its reach. He also does not explain how his own conduct in particular would present a situation of a pure conspirator. Further, his interpretation of section 31 was rejected in *People v. Mohamed* (2011) 201 Cal.App.4th 515, 523–524, both as a matter of its own independent interpretation of the statute (which has not garnered any criticism in the interim) and in reliance on the unequivocal statement in Hardy that "[o]ne who conspires with others to commit a felony is guilty as a principal," citing the statute in support. (*Hardy*, *supra*, 41 Cal.4th at p. 1025.) If unconvinced, defendant Canseco may now address his arguments to the Supreme Court; we are neither willing nor able to endorse them. *Mendoza*, 2014 WL 2466565, at *5.

*Mendoza*, 2014 WL 2466565, at *5. Petitioner raised both claims in a petition for review filed with the California Supreme Court. Lodg. Doc. No. 9 (Petition for Review) at 9-15. This petition was denied. Lodg. Doc. No. 10 (Order Denying Petition for Review).

### 1.   **Applicable Legal Standards**

"A habeas petition must allege the petitioner's detention violates the Constitution, a federal statute, or a treaty." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). A state court's interpretation of state laws or rules is not a basis for federal habeas corpus relief because no federal question is presented. *Estelle*, 502 U.S. 62 at 67-68.

Jury instructions are generally matters of state law and, as such, federal courts are bound by a state appellate court's determination that a particular instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Additionally, "[f]ailure to give [a jury] instruction which might be proper as a matter of state law," by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment."

*Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotations omitted). A challenge to a trial court's jury instructions is reviewed under the standards in *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) – that is, whether the error had a substantial and injurious effect in determining the jury's verdict. *See California v. Roy*, 519 U.S. 2, 5 (1996).

### 2. **Analysis**

The question of whether California felony-murder derivative liability or special circumstance should apply to conspirators sounds exclusively in state law. Petitioner has not cited any controlling, clearly established federal law (and the court is not aware of any) which dictates that either California code provision should be circumscribed in the way he suggests. In fact, petitioner has not cited any specific federal authority whatsoever in support of either claim. This is unsurprising given that state law controls the required elements of criminal offenses. *Estelle*, 502 U.S. 62 at 67-68.

Nor can petitioner succeed with these claims simply by alleging that the trial court's instructions on this matter were erroneous as a matter of state law. As noted above, jury instructions are generally matters of state law and, as such, this court is bound by the state appellate court's determination that neither limitation proposed by petitioner was correct under California law. *See Bradshaw*, 546 U.S. 74 at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeal determined that the limitation on derivative liability suggested by petitioner could only be, but had not been, established by the California Supreme Court. *Mendoza*, 2014 WL 2466565, at *5. To the contrary, that court had determined that "[o]ne who conspires with others to commit a felony is guilty as a principal." *In re Hardy,* 41 Cal. 4th 977, 1025 (Cal. 2007).[5] Next, the court of appeal

---

[5] Under California Penal Code § 31 a principal is defined as:

> All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, or persons who are mentally incapacitated, to

15

found that the special circumstance instruction was also appropriate under state law and again cited[6] *Hardy* for the proposition that conspirators fall within the definition of a principal to a crime. It also noted that the facts of the case plainly indicated that petitioner was a 'major participant' in the victim's murder and his actions would necessarily be categorized as 'aiding and abetting' within the meaning of § 190.2(d) even if the statute did not intend the inclusion of co-conspirators. *Mendoza*, 2014 WL 2466565, at *5. This reading of the facts was not unreasonable. As such, these state law determinations bind this court and preclude the issuance of habeas relief on either claim.

**C. Cumulative Error**

Finally, petitioner argues that "the cumulative effect of several 'forces' . . . led this jury to improperly find first-degree murder on the instructions given." ECF No. 1-1 at 19. It is unclear whether petitioner actually intends to raise a cumulative error claim or if these arguments are intended as a persuasive summation of his earlier claims. There is no indication that petitioner raised an explicit cumulative error claim before the court of appeal and respondent did not address this issue in her answer. Regardless, this claim, to the extent petitioner intends to raise it, is without merit. *See* 28 U.S.C. § 2254(b)(2) (a federal court may dismiss a meritless claim that is unexhausted).

As a preliminary matter, several of the arguments raised in support of the purported 'cumulative effect' are frivolous. Petitioner argues, for instance, that jurors in a murder case are likely to be sitting in judgment for the first time in their lives and that "much of the social-science research" indicates that jurors misunderstand large portions of the instructions they are given.

---

commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed.

Cal. Penal Code § 31.

[6] The court of appeals also cited *People v. Mohamed*, another state appellate case that addressed the question of whether a co-conspirator falls within the definition of a 'principal' to a crime and reached an identical conclusion. 201 Cal.App.4th 515, 523 (Cal.App. 4 Dist. 2011).

16

ECF No. 1-1 at 19. No federal law mandates experienced jurors. It may be that jurors, in spite of the best efforts of trial court judges, sometimes misunderstand the instructions they are given. Petitioner has not offered any evidence that the jurors in *this* case misunderstood their instructions, however. An abstract, conceptual argument that jurors are less capable of grasping the legal content of their instructions than courts imagine does not warrant habeas relief.

Next, petitioner argues that the California felony-murder rule is complex and its instruction must explain 'every nuance.' *Id*. at 20. He states that the jurors in this case were likely unsure of the elements triggering the rule because: (1) the prosecutor was allowed to introduce instructions on conspiracy as a general theory of derivative liability and (2) that the prosecutor was allowed an instruction which erroneously included conspiracy as an independent basis for a special circumstance within the meaning of Penal Code §190.2 (c)-(d). ECF No. 1-1 at 20. As noted above, however, the court of appeal determined that neither instruction was erroneous under California law. The court of appeal also reasonably determined that petitioner would be an 'aider and abettor' under the facts of the case even if the relevant portions of the felony murder rule were inapplicable to co-conspirators. As such, any error in extending § 190.2 to co-conspirators did not result in an unfair trial.

Finally, petitioner contends that it cannot be known whether the jury found the felony-murder special circumstance based on conspiracy, aiding or abetting, or some combination of the two. ECF No. 1-1 at 22. He argues that, if the scope of the felony murder rule excludes a 'pure conspirator', there is no way to determine if this instructional ambiguity was harmless. *Id*. at 23. First and as previously noted, the court of appeal found that the facts did not support petitioner's classification of himself as a 'pure conspirator.' Second, where a jury instruction is ambiguous, "the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Dixon v. Williams*, 750 F.3d 1027, 1033 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (June 11, 2014) (citations omitted).

/////

/////

/////

17

Here, petitioner offers only his own speculation that the jury violated his federal rights in their application of the trial court's instructions. Absent some actual evidence of misapplication, however, this court cannot say that there is a 'reasonable likelihood' that petitioner's constitutional rights were violated.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 20, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE